## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HECTOR AYALA HERRERA and OVIDIO MENENDEZ PEREZ, individually and on behalf of all persons similarly situated,** | : : : | **Civil Action No.:** _____ |
| | : | |
| **Plaintiffs,** | : : | **Class & Collective Action** |
| | : : | |
| **v.** | : : | **Jury Trial Demanded** |
| | : | |
| **ROLLING GREEN LANDSCAPE AND DESIGN, INC. and DOMINIC J. VARALLO, JR.** | : : : : | |
| | : | |
| **Defendant.** | : | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Hector Ayala Herrera ("Ayala") and Ovidio Menendez Perez ("Menendez"), through their undersigned counsel, individually and on behalf of all persons similarly situated, file this Class and Collective Action Complaint against Defendants Rolling Green Landscape and Design, Inc. ("Rolling Green") and Dominic Varallo ("Varallo") (collectively, "Defendants"), seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), the Civil Rights Act of 1866 as amended, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. §§ 951—963 ("PHRA") and Pennsylvania common law. Plaintiffs' FLSA claim is asserted as a collective action under FLSA Section 16(b), 29 U.S.C. § 216(b), while their Pennsylvania Minimum Wage Act ("PMWA") and Pennsylvania common law claims are asserted as a class action under Federal Rule of Civil Procedure 23. *See Knepper v. Rite Aid Corp.*, 675 F.3d 249 (3d Cir. 2012) (FLSA collective action claims and Rule 23 class action claims may proceed together in same lawsuit). Plaintiffs'

42 U.S.C. § 1981 claims are asserted individually on behalf of Plaintiff Ayala and Plaintiff Menendez.   The Title VII and PHRA claims are asserted individually on behalf of Plaintiff Ayala.

## JURISDICTION AND VENUE

1.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims derive from a common nucleus of operative facts as the FLSA claim.

3.      This Court has jurisdiction over Plaintiffs' 42 USC §1981 claim pursuant to 28 U.S.C. § 1343.

4.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.  The events giving rise to Plaintiffs' claims occurred within this District, Defendant is incorporated in Pennsylvania and Defendant conducts business in this District.

## PARTIES

1.      Plaintiff Hector Ayala Herrera resides in Bucks County, Pennsylvania.  From about mid-2013 to March 2016, Mr. Ayala worked for Defendants as a landscape laborer. Pursuant to 29 U.S.C. § 216(b), Mr. Ayala has consented to be a Plaintiff in this action.  *See* Exhibit A.

2.      Plaintiff Ovidio Menendez Perez resides in Mercer County, New Jersey.  From March 2011 to May 2017, Mr. Menendez worked for Defendants as a landscape laborer. Pursuant to 29 U.S.C. § 216(b), Mr. Menendez has consented to be a Plaintiff in this action.  *See* Exhibit B.

3.      Defendant Rolling Green Landscape and Design, Inc. is a corporation that maintains its operational headquarters in Furlong, Bucks County, Pennsylvania and is incorporated in Pennsylvania.

4.      Defendant Dominic J. Varallo, Jr. is the owner and President of Rolling Green and resides in Pennsylvania. Varallo has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employee records of Rolling Green.

5.      Defendant Varallo acted intentionally and maliciously and is an employer pursuant to 29 U.S.C. § 203(d), 43 P.S. § 333.103(g), and regulations promulgated thereunder, 29 C.F.R. § 791.2, Title VII, and the PHRA, and is jointly and severally liable with Rolling Green.

6.      Defendant Rolling Green provides landscaping and hardscaping services to residential and commercial clients in southeastern Pennsylvania and southern New Jersey. *About,* https://rollinggreen.wixsite.com/rgld/about (last visited 7/17/2017).

7.      Defendants employed Plaintiffs and have employed and continue to employ similarly situated employees.

8.      Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person as required by 29 U.S.C. §§ 206-207.

9.      Rolling Green's annual gross volume of sales made or business done exceeds $500,000.

10.     Defendants employ more than 15 individuals.

## CLASS DEFINITIONS

11.     Plaintiffs brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b)

as a collective action on behalf of themselves and the following class:

> All current and former landscape laborers employed by Defendants who performed work between July 17, 2014 and the present (the "FLSA Class").

12.     Plaintiffs brings Counts II and III of this lawsuit as a class action pursuant to FED.

R. CIV. P. 23, on behalf of themselves and the following class:

> All current and former landscape laborers employed by Defendants who performed work in Pennsylvania between July 17, 2013[1] and the present (the "Pennsylvania Class").

13.     The FLSA Class and the Pennsylvania Class are together referred to as the

"Classes."

14.     Plaintiffs reserve the right to redefine the Classes prior to notice or class

certification, and thereafter, as necessary.

## FACTS

15.     Rolling Green provides landscaping and hardscaping services to residential and

commercial clients in southeastern Pennsylvania, southern New Jersey, and New York.  Rolling

Green employs landscape laborers, like Mr. Ayala, Mr. Menendez and members of the Classes,

to perform landscape and hardscape installation and maintenance services, as well as snow

removal services.

16.     From mid-2013 to March 2016, Mr. Ayala was employed as a landscape laborer

with Defendants in Pennsylvania.

---

[1] The statute of limitations on Plaintiffs' unjust enrichment claim is four (4) years.  Therefore, employees may be members of the Pennsylvania Class if they were employed on or after July 17, 2013, for at least one of the claims alleged on behalf of the Pennsylvania Class.

17.     From March 2011 to May 2017, Mr. Menendez was also employed as a landscape laborer with Defendants in southern New Jersey and southeastern Pennsylvania.

18.     Plaintiffs and members of the Classes are not exempt under the FLSA or PMWA.

19.     Plaintiffs' and Class Members' primary responsibilities were: planting trees, shrubs, and flowers; mowing lawns; pruning; installing pavers, patios, driveways, decks, gazebos, fences, fire pits and outdoor kitchens; raking and removing leaves and debris; and, removing snow from driveways, roads, and parking lots.

20.     Plaintiffs and Class Members were required to present themselves for work every morning at Rolling Green's headquarters, located at 2389 Forest Grove Rd, Furlong, PA 18925, at a time determined by Defendant Varallo.

21.     Plaintiffs and Class Members were not permitted to travel directly from home to the day's worksite, nor were they permitted to return home from the worksite without first going to Rolling Green's headquarters.

22.     Plaintiffs and Class Members were often told to arrive at work at 6:00 A.M.

**Wage Violations**

23.     Defendants did not permit Plaintiffs and Class Members to punch their time cards until Defendant Varallo arrived.

24.     Plaintiffs and Class Members often waited several minutes for Defendant Varallo to arrive.  Sometimes, Plaintiffs and Class Members began prepping for the workday and loading trucks while waiting for Defendant Varallo.

25.     They were not paid for any waiting or working time before they "officially" punched in following Defendant Varallo's arrival.  Sometimes, Defendant Varallo prohibited Plaintiffs and Class Members from punching in at all in the morning, instead punching in for

them later in the work day.

26.     After Plaintiffs and Class Members loaded equipment into Defendant Rolling Green's trucks, they drove to that day's worksite in Rolling Green vehicles.

27.     Mr. Ayala usually drove one of Defendant Rolling Green's trucks.

28.     During the warmer months of the year, Plaintiffs' job duties at the worksites included constructing patios, installing drainage systems, planting flowers and shrubs, mowing lawns, maintaining lawns and plants and spraying chemicals. Plaintiffs observed other Class Members performing the same or substantially similar job duties.

29.     In the colder months, Plaintiffs' job duties included planting trees, removing snow, excavating land for driveways and building patios. Plaintiffs observed other Class Members performing the same or substantially similar job duties.

30.     Initially, Defendants paid Mr. Ayala an hourly wage rate of $18 per hour.

31.     At some point in 2015, Defendants began paying Mr. Ayala an hourly wage rate of $19 per hour.

32.     Initially, Defendants paid Mr. Menendez an hourly wage rate of $8 per hour.

33.     By June 2017, Defendants were paying Mr. Menendez an hourly wage rate of $12 per hour.

34.     Plaintiffs observed Class Members were also paid an hourly wage rate.

35.     For part of the year, from approximately April through August of 2015, Defendants provided Mr. Ayala with a bi-weekly pay statement that indicated some, but not all, of the hours worked by Mr. Ayala during the pay period.

36.     From approximately September through March of 2015, Defendants did not provide any pay statements to Mr. Ayala.

37.     Generally, for up to the first forty (40) hours worked in a workweek, Defendants paid Plaintiffs via check.

38.     Plaintiffs regularly worked more than forty (40) hours per workweek.

39.     Plaintiffs observed that the Class Members routinely worked similar schedules.

40.     Defendants paid Mr. Ayala and Mr. Menendez at their respective regular hourly wage rates, in cash, for hours worked more than forty (40) hours per week.

41.     Defendants did not pay either Mr. Ayala or Mr. Menendez the time-and-a-half overtime premium for hours that each worked more than forty (40) hours per week.

42.     These overtime hours were not recorded on pay statements provided to either Plaintiff.

43.     Defendants often failed to pay Plaintiffs and Class Members for all hours worked.

44.     Defendants did not pay Plaintiffs and other Class Members for time spent traveling to and from worksites and Rolling Green's headquarters, where they were required to begin and end each day.

45.     When Mr. Ayala inquired about missing wages, Defendant Varallo told him that wages were being deducted to account for break time or time spent driving to or from worksites.

46.     In fact, Plaintiffs and Class Members were rarely allowed to take breaks during the work day.

47.     Defendants often paid Plaintiffs and Class Members late.  Plaintiffs and Class Members sometimes waited several days or even months for their paychecks.

**Prior Wage Violations by Defendant Rolling Green**

48.     From August 2008 through July 30, 2010, Defendant Rolling Green was subject to an investigation by the United States Department of Labor Wage and Hour Division ("DOL").

49.     As a result of that investigation, the DOL determined that Defendant Rolling Green failed to pay the time and a half overtime premium to 153 employees.

50.     The DOL also determined that Defendant Rolling Green improperly deducted from employees' wages for two 15 minute breaks and one hour of travel time per day.

51.     The DOL also determined that Defendant Rolling Green did not keep time records for the period required by law.

52.     The DOL calculated that Defendant Rolling Green owed employees $311,876.22 in unpaid wages for the time covered by the investigation.

53.     Defendant Rolling Green did not pay any of the unpaid wages to affected employees.

54.     Instead, Defendant Rolling Green agreed to comply with the FLSA by ensuring that employees are paid for all hours worked, by ensuring that the time cards are reflective of the hours worked and that employees are not deducted for breaks that are under 30 minutes in duration and are free and clear of work. After the DOL investigation, however, Defendant Rolling Green did not follow through on its agreement to comply with the FLSA by failing to ensure employees are paid for all hours worked, failing to ensure that the time cards are reflective of the hours worked, and failing to ensure that employees are not deducted for breaks that are under 30 minutes in duration and are free and clear of work.

55.     Defendant Rolling Green also agreed to comply with the FLSA by paying for travel time back to the shop when work is suffered or permitted. After the DOL investigation, however, Defendant Rolling Green did not follow through on its agreement to comply with the FLSA by failing to pay for travel time back to the shop when work is suffered or permitted.

56.     Defendant Rolling Green also agreed to comply with the FLSA by maintaining

records for the legally required amount of time for time records as well as payroll records. After the DOL investigation, however, Defendant Rolling Green did not follow through on its agreement to comply with the FLSA by failing to maintain records for the legally required amount of time for time records as well as payroll records.

57.    Defendant Rolling Green also agreed to comply with the FLSA by paying overtime for all hours worked over 40 in a workweek. After the DOL investigation, however, Defendant Rolling Green did not follow through on its agreement to comply with the FLSA by failing to pay overtime for all hours worked over 40 in a workweek.

**Discrimination and Harassment**

58.    Mr. Ayala is a non-white Latino man of Mexican national origin.

59.    Mr. Menendez is a non-white Latino man of Guatemalan national origin.

60.    Defendants engaged in discriminatory behavior against Plaintiffs and other non-white Latino/Hispanic workers, including those of Mexican and Guatemalan national origin because of their race and/or national origin.

61.    Defendant Varallo engaged in sexual harassment, sexual assault, and physical assault toward Plaintiffs and other non-white Latino male employees, including but not limited to the following:

    a. Defendant Varallo frequently grabbed Plaintiffs' private parts and buttocks; he also did this with other non-white Latino male employees.

    b. Defendant Varallo frequently grabbed his own private parts in front of Plaintiffs and other non-white Latino male employees.

    c. On numerous occasions, Defendant Varallo responded to Plaintiffs' requests for their paychecks by dropping his pants, revealing his backside and

spreading his buttocks while inviting Plaintiffs to reach in for their paychecks.

d. On other occasions, Defendant Varallo would respond to Plaintiffs and other non-white Latino male employees who asked for their paychecks by screaming at and pushing them. Defendant Varallo laughed while pushing Mr. Menendez. Mr. Menendez observed that Defendant Varallo laughed while pushing other non-white Latino male employees.

e. On several occasions, Defendant Varallo painted the backsides of non-white Latino male employees and told them that he wanted to "mark them" to show everyone the workers belonged to him.

f. On several occasions, Defendant Varallo drove straight toward Plaintiffs while they were standing outside, threatening to hit them with his truck.

g. On several occasions, Defendant Varallo has thrown objects, including rocks, at vehicles while Plaintiffs and other non-white Latino male employees were operating the vehicles.

62. Defendant Varallo used racial slurs and derogatory terms to refer to Plaintiffs and other non-white Latino employees, including but not limited to the following:

a. Defendant Varallo often referred to Plaintiffs as "mis niñas," which means "my little girls" in Spanish, or as "chillona," which is the feminine form of the Spanish word for "cry baby."

b. Defendant Varallo often referred to Mr. Ayala as a "fucking Mexican."

c. Defendant Varallo often used Spanish language slurs such as "pinches illegales," "pinches Mexicanos," and "pinches Guatemaltecos" to refer to non-white Latino employees, including Mr. Ayala and Mr. Menendez.

    d.  On several occasions, Defendant Varallo responded to Mr. Menendez's requests for his paycheck by chasing him out of his office and calling him "fucking Guatemalan," "illegal," and "fucking bruto." "Bruto" is the Spanish word for "brute" or "beast."

63.    Defendant Varallo was motivated by race, national origin, and sex when he engaged in sexual harassment, sexual assault and physical assault against Plaintiffs and other non-white Latino male employees.

64.    Defendant Varallo was motivated by race and national origin when he used racially charged and discriminatory language against Plaintiffs and other non-white Latino employees.

65.    Defendants were motivated by race and national origin when they failed to pay Plaintiffs the overtime premium, failed to pay Plaintiffs for all hours worked, and failed to pay Plaintiffs on time.

66.    Defendant Varallo's conduct was not welcomed by Plaintiffs.

67.    Defendant Varallo's conduct was so severe and pervasive that a reasonable person in Mr. Ayala's and Mr. Menendez's respective positions would find the work environment hostile or abusive.

68.    In fact, Mr. Ayala and Mr. Menendez each found Defendant Varallo's conduct so severe and pervasive that it created a hostile and abusive work environment.

69.    Upon information and belief, Defendants did not afford Plaintiffs the same compensation, benefits, and terms and conditions of employment as those afforded to white, American employees.

70.    On December 20, 2016, Mr. Ayala filed a dual Charge of Discrimination with the

Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission. *See* Exhibit C.

71.     Pursuant to 42 U.S.C. § 2000e-5(f), on July 7, 2017, Mr. Ayala exhausted his administrative remedies and received a Notice of Right to Sue. *See* Exhibit D.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

72.     Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class defined above.

73.     Plaintiffs desire to pursue their FLSA claim on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

74.     Plaintiffs and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendant Rolling Green's previously described common pay practices and, as a result of such practices, were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek and were not paid for all hours worked.  Resolution of this action requires inquiry into common facts, including, *inter alia*, Rolling Green's common compensation, timekeeping, and payroll practices applicable to landscape laborers.

75.     Specifically, Rolling Green failed to pay overtime at time and a half (1½ times) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

76.     In addition, Rolling Green failed to pay wages for all hours worked by landscape laborers by: (1) failing to pay or deducting wages for time spent traveling to and from Rolling Green's headquarters at the beginning and end of the work day; and (2) deducting wages for break time, when Plaintiffs and FLSA Class members were not permitted to take breaks in

12

excess of 15 minutes.

77.     The similarly situated employees are known to Rolling Green and are readily identifiable and may be located through Rolling Green's records and the records of any payroll companies that Rolling Green utilizes.

78.     FLSA Class Members may be readily notified of this action through direct U.S. mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

## CLASS ACTION ALLEGATIONS
### (Pennsylvania Class)

79.     Plaintiffs bring this action as a class action pursuant to FED. R. CIV. P. 23 on behalf of themselves and the Pennsylvania Class defined above.

80.     The members of the Pennsylvania Class are so numerous that joinder of all members is impracticable.  Upon information and belief, there are more than forty (40) members of the Pennsylvania Class.

81.     Plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Class because there is no conflict between the claims of Plaintiffs and those of the Pennsylvania Class, and Plaintiffs' claims are typical of the claims of the Pennsylvania Class. Plaintiffs' counsel areis competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

82.     There are questions of law and fact common to the proposed Pennsylvania Class, which predominate over any questions affecting only individual Class members, including, without limitation: whether Rolling Green has violated and continues to violate Pennsylvania law through its policy or practice of not paying its landscape laborers proper overtime compensation

for all hours worked.

83.     Plaintiffs' claims are typical of the claims of the Pennsylvania Class in the following ways, without limitation:  (a) Plaintiffs are members of the Pennsylvania Class; (b) Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Pennsylvania Class; (c) Plaintiffs' claims are based on the same legal and remedial theories as those of the Pennsylvania Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiffs and the Pennsylvania Class Members; and (e) the injuries suffered by Plaintiffs are similar to the injuries suffered by the Pennsylvania Class members.

84.     Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to the Pennsylvania Class predominate over any questions affecting only individual Class members.

85.     Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  The Pennsylvania Class is readily identifiable from Rolling Green's employment records.  Prosecution of separate actions by individual members of the Pennsylvania Class would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Rolling Green.

86.     A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical.   Further, the amounts at stake for many of the Pennsylvania Class members, while substantial, are not great enough to enable them to maintain separate suits against Rolling Green.

87.     Without a class action, Rolling Green will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the Pennsylvania Class.   Plaintiffs envision no difficulty in the management of this action as a class action.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiffs and the FLSA Class)**

88.     All previous paragraphs are incorporated as though fully set forth herein.

89.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed.   *See* 29 U.S.C. § 207(a)(1).

90.     Rolling Green is subject to the wage requirements of the FLSA because Rolling Green is an "employer" under 29 U.S.C. § 203(d).

91.     Dominic J. Varallo, Jr. is subject to the wage requirements of the FLSA because Varallo is an "employer" under 29 U.S.C. § 203(d).

92.     At all relevant times, Rolling Green is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

93.     At all relevant times, Mr. Varallo is an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

94.     During all relevant times, Plaintiffs and the FLSA Class are covered employees entitled to the above-described FLSA's protections. *See* 29 U.S.C. § 203(e).

95.     Plaintiffs and the FLSA Class are not exempt from the requirements of the FLSA. Plaintiffs and the FLSA Class are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

96.     Defendants' compensation scheme applicable to Plaintiffs and the FLSA Class failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

97.     Defendants knowingly failed to compensate Plaintiffs and the FLSA Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

98.     Upon information and belief, Defendants also failed to make, keep, and preserve records with respect to Plaintiffs and the FLSA Class sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA.  29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

99.     In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

100.    Pursuant to 29 U.S.C. § 216(b), employers such as Rolling Green and Mr. Varallo, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

### COUNT II
### Violation of the Pennsylvania Minimum Wage Act
### (On Behalf Plaintiffs and the Pennsylvania Class)

101.    All previous paragraphs are incorporated as though fully set forth herein.

102.    The Pennsylvania Minimum Wage Act of 1968 ("PMWA") requires that covered employees be compensated for all hours worked. *See* 43 P.S. § 333.104(a) and 34 PA. CODE § 231.21(b).

103.    The PMWA also requires that covered employees be compensated for all hours worked more than forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular hourly rate at which he is employed. *See* 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

104.    Rolling Green is subject to the overtime requirements of the PMWA because Rolling Green is an employer under 43 P.S. § 333.103(g).

105.    Dominic J. Varallo, Jr. is subject to the overtime requirements of the PMWA because Varallo is an employer under 43 P.S. § 333.103(g).

106.    During all relevant times, Plaintiffs and the Pennsylvania Class were covered employees entitled to the above-described PMWA's protections. *See* 43 P.S. § 333.103(h).

107.    Defendants' compensation scheme that is applicable to Plaintiffs and the Pennsylvania Class failed to comply with 43 P.S. §§ 333.104(a) and (c), 34 PA. CODE §§ 231.1(b) and 43(b).

108.    Defendants failed to compensate Plaintiffs and the Pennsylvania Class at a rate of one and one-half (1 ½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 43 P.S. § 333.104(c) and 34 PA. CODE § 231.41.

109.    Defendants fail to accurately track all of the hours that Plaintiffs and the Pennsylvania Class work. *See* 43 P.S. § 333.108 and 34 PA. CODE § 231.31.

110.    Pursuant to 43 P.S. § 333.113, employers, such as Rolling Green and Mr. Varallo, who fail to pay an employee wages in conformance with the PMWA, shall be liable to the

employee for the wages or expenses that were not paid, court costs and attorneys' fees incurred in recovering the unpaid wages.

## COUNT III
### Unjust Enrichment
### (On Behalf of the Plaintiffs and the Pennsylvania Class)

111. All previous paragraphs are incorporated as though fully set forth herein.

112. Defendants have received and benefited from the uncompensated labors of Plaintiffs and the Pennsylvania Class, such that to retain said benefit without compensation would be inequitable and rise to the level of unjust enrichment.

113. At all relevant times hereto, Defendants devised and implemented a plan to increase their earnings and profits by fostering a scheme of securing work from Plaintiffs and the Pennsylvania Class without properly paying compensation for all hours worked including overtime compensation.

114. Contrary to all good faith and fair dealing, Defendants induced Plaintiffs and the Pennsylvania Class to perform work while failing to properly compensate for all hours worked as required by law including overtime compensation.

115. By reason of having secured the work and efforts of Plaintiffs and the Pennsylvania Class without proper compensation as required by law, Defendants enjoyed reduced overhead with respect to their labor costs and therefore realized additional earnings and profits to their own benefit and to the detriment of Plaintiffs and the Pennsylvania Class. Defendants retained and continue to retain such benefits contrary to the fundamental principles of justice, equity and good conscience.

116. Accordingly, Plaintiffs and the Pennsylvania Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants.

## COUNT IV

## Violations of the Civil Rights Act of 1866 as amended
### (On Behalf of the Plaintiffs Ayala and Menendez)

117.    All previous paragraphs are incorporated as though fully set forth herein.

118.    Defendants engaged in unlawful employment practices in violation of the Civil Rights Act of 1866 as amended. 42 U.S.C. § 1981.

119.    42 U.S.C.§ 1981 at ¶(a) provides as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

120.    42 U.S.C.§ 1981 at ¶(b)  provides as follows:

the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

121.    Contracts of employment incorporate provisions required therein by federal and state law, including the requirement to pay the overtime premium for hours worked in excess of 40 hours in a week by non-exempt employees.

122.    Plaintiffs include a non-white Latino of Mexican national origin and a non-white Latino of Guatemalan national origin.

123.    By engaging in the practices complained of above, Defendants deprived Plaintiffs of the rights to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

124.    Upon information and belief, at time relevant to this matter, Defendants discriminated against Plaintiffs by offering inferior terms and conditions of employment to them compared to the terms offered to white U.S. citizen workers.

125.    Upon information and belief, Defendants' failure to pay the overtime premium to Plaintiffs was intended to deprive Plaintiffs of their rights to make and enforce contractual terms relating to the payment of overtime established by state and federal law.

126.    Plaintiffs are entitled to compensatory damages, punitive damages, and attorney's fees resulting from Defendants' denial of their equal rights to make and enforce contracts.

### COUNT V
### Race, National Origin, and Sex-based
### Harassment and Discrimination in Violation of Title VII
### (On Behalf of Plaintiff Ayala)

127.    All previous paragraphs are incorporated as though fully set forth herein.

128.    This is a claim by Plaintiff Ayala on behalf of himself for harassment and discrimination on the basis of race, national origin, and sex in violation of Title VII of the Civil Rights Act, as amended.

129.    Defendants engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §§2000e-2(a).

130.    The effect of the conduct described in ¶¶58-71, supra, has been to deprive Plaintiff Ayala of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, national origin, and sex.

131.    This unlawful conduct created a hostile work environment.

132.    This unlawful conduct resulted in physical and emotional pain and suffering, embarrassment, and humiliation to Plaintiff Ayala.

133.    The unlawful employment practices described in ¶¶58-71, supra, were intentional.

134.    The unlawful employment practices described in ¶¶58-71, supra, were done with malice or with reckless indifference to Plaintiff Ayala's federally protected rights.

### COUNT VI

**Race and National Origin -based**
**Pay Discrimination in Violation of Title VII**
**(On Behalf of Plaintiff Ayala)**

135.    All previous paragraphs are incorporated as though fully set forth herein.

136.    This is a claim by Plaintiff Ayala on behalf of himself for pay discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act, as amended.

137.    Defendants engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. §§2000e-2(a).

138.    The effect of the conduct described in ¶¶23-47, *supra*, has been to deprive Plaintiff Ayala of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and national origin. Upon information and belief, this unlawful conduct resulted in Plaintiff Ayala being subject to unlawful pay practices solely because of his race and national origin.

139.    The unlawful employment practices described in ¶¶23-47, supra, were intentional.

140.    The unlawful employment practices described in ¶¶23-47, supra, were done with malice or with reckless indifference to Plaintiff Ayala's federally protected rights.

**COUNT VII**
**Race, National Origin, and Sex-based**
**Harassment and Discrimination in Violation of the PHRA**
**(On Behalf of Plaintiff Ayala)**

141.    All previous paragraphs are incorporated as though fully set forth herein.

142.    This is a claim by Plaintiff Ayala on behalf of himself for harassment and discrimination on the basis of race, national origin, and sex in violation of the Pennsylvania Human Relations Act, as amended.

143.    Defendants engaged in unlawful employment practices in violation of in violation of Section 5(a) of the Pennsylvania Human Relations Act of 1955, P.L. 744, No. 222, as

amended by Act 34 of 1997, 43 P.S. §§ 951-963.

144.     The effect of the conduct described in ¶¶ 58-71 has been to deprive Plaintiff Ayala of equal employment opportunities and otherwise adversely affect his status as an employee because of his race, national origin, and sex.

145.     This unlawful conduct created a hostile work environment.

146.     This unlawful conduct resulted in physical and emotional pain and suffering, embarrassment, and humiliation to Plaintiff Ayala.

147.     The unlawful employment practices described in ¶¶58-71, supra, were intentional.

148.     The unlawful employment practices described in ¶¶58-71, supra, were done with malice or with reckless indifference to Plaintiff Ayala's federally protected rights.

**COUNT VIII**
**Race and National Origin-based**
**Pay Discrimination in Violation of the PHRA**
**<u>(On Behalf of Plaintiff Ayala)</u>**

149.     All previous paragraphs are incorporated as though fully set forth herein.

150.     This is a claim by Plaintiff Ayala on behalf of himself for pay discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act, as amended.

151.     Defendants engaged in unlawful employment practices in violation of Section 5(a) of the Pennsylvania Human Relations Act of 1955, P.L. 744, No. 222, as amended by Act 34 of 1997, 43 P.S. §§ 951-963

152.     The effect of the conduct described in ¶¶23-47, supra, has been to deprive Plaintiff Ayala of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and national origin. Upon information and belief, this unlawful conduct resulted in Plaintiff Ayala being subject to unlawful pay practices solely because of his race and national origin.

153.    The unlawful employment practices described in ¶¶23-47, supra, were intentional.

154.    The unlawful employment practices described in ¶¶23-47, supra, were done with malice or with reckless indifference to Plaintiff Ayala's federally protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a.  An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.  Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class members;

c.  An order permitting this litigation to proceed as a class action pursuant to FED. R. CIV. P. 23 on behalf of the Pennsylvania Class;

d.  Back pay damages (including unpaid overtime compensation and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

e.  Liquidated and statutory damages to the fullest extent permitted under the law;

f.  Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

g.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury for all issues of fact.

Dated:  July 17, 2017                              Respectfully submitted,

                                                   FRIENDS OF FARMWORKERS, INC.


                                                   _____
                                                   Liz Maria Chacko (PA 95115)
                                                   FRIENDS OF FARMWORKERS, INC.
                                                   699 Ranstead Street, 4th Floor
                                                   Philadelphia, PA 19106

Telephone: (215) 733-0878
lchacko@friendsfw.org

Shanon J. Carson (PA 85957)
Sarah R. Schalman-Bergen (PA 206211)
Camille Fundora (PA 312533)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net
cfundora@bm.net

Ryan Allen Hancock (PA 92590)
Willig, Williams & Davidson
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
Telephone: (215) 656-3600
Facsimile: (215) 567-2310
rhancock@wwdlaw.com

*Attorneys for Plaintiffs and the Proposed Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **HECTOR AYALA HERRERA and OVIDIO MENENDEZ PEREZ, individually and on behalf of all persons similarly situated,** | : : : : **Civil Action No.: _____** |
|  | : |
| **Plaintiffs,** | : **Class & Collective Action** |
|  | : : |
| **v.** | : **Jury Trial Demanded** |
|  | : : |
| **ROLLING GREEN LANDSCAPE AND DESIGN, INC. and DOMINIC J. VARALLO, JR.** | : : : |
|  | : : |
| **Defendant.** | : |

## EXHIBIT A
## CONSENT TO BE PLAINTIFF, HECTOR AYALA HERRERA

**CONSENT TO BE PLAINTIFF**

This is to notify the Court that I, <u>Hector Ayala Herrera</u>, hereby consent to be a plaintiff under the Fair Labor Standards Act (FLSA) and any applicable state employment law, including the Pennsylvania Wage Payment and Collection Law and the Pennsylvania Minimum Wage Act, in claims arising from my employment in the United States of America with <u>Rolling Green Landscape Design, Inc.</u>, and affiliated entities and persons.

<u>HECTOR AYALA HERRERA</u>

Dated: <u>4 - 21 - 2017</u>

**CONSENTIMIENTO PARA SER UN DEMANDANTE**

Por la presente le aviso a la Corte que yo, <u>Hector Ayala Herrera</u>, estoy de acuerdo con ser un Demandante bajo la Ley de Normas Justas de Trabajo (Fair Labor Standards Act/FLSA) y cualquier otras leyes estatales de empleo que se apliquen, incluyendo la Ley del Pago de Salario y Colección de Sueldos de Pennsylvania y la Ley del Sueldo Mínimo de Pennsylvania, en las reclamaciones derivadas de mi empleo en Los Estados Unidos de América con <u>Rolling Green Landscape Design, Inc.</u>, y las entidades y personas afiliadas.

<u>HECTOR AYALA HERRERA</u>

Fecha: <u>4 - 21 - 2017</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HECTOR AYALA HERRERA and OVIDIO MENENDEZ PEREZ, individually and on behalf of all persons similarly situated,** | : | **Civil Action No.:** _____ |
| | : | |
| | : | |
| | : | **Class & Collective Action** |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **Jury Trial Demanded** |
| | : | |
| **ROLLING GREEN LANDSCAPE AND DESIGN, INC. and DOMINIC J. VARALLO, JR.** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

**EXHIBIT B**
**CONSENT TO BE PLAINTIFF, OVIDIO MENENDEZ PEREZ**

**CONSENT TO BE PLAINTIFF**

This is to notify the Court that I, <u>Ovidio Menendez Perez</u>, hereby consent to be a plaintiff under the Fair Labor Standards Act (FLSA) and any applicable state employment law, including the Pennsylvania Wage Payment and Collection Law and the Pennsylvania Minimum Wage Act, in claims arising from my employment in the United States of America with <u>Rolling Green Landscape Design, Inc.</u>, and affiliated entities and persons.

_ovidiomenehdez_
_____
OVIDIO MENENDEZ PEREZ

Dated: _6/8/ 17_

**CONSENTIMIENTO PARA SER UN DEMANDANTE**

Por la presente le aviso a la Corte que yo, <u>Ovidio Menendez Perez</u>, estoy de acuerdo con ser un Demandante bajo la Ley de Normas Justas de Trabajo (Fair Labor Standards Act/FLSA) y cualquier otras leyes estatales de empleo que se apliquen, incluyendo la Ley del Pago de Salario y Colección de Sueldos de Pennsylvania y la Ley del Sueldo Mínimo de Pennsylvania, en las reclamaciones derivadas de mi empleo en Los Estados Unidos de América con <u>Rolling Green Landscape Design, Inc.</u>, y las entidades y personas afiliadas.

_ovidiomenehdez_
_____
OVIDIO MENENDEZ PEREZ

Fecha: _6/8/17_

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **HECTOR AYALA HERRERA and OVIDIO MENENDEZ PEREZ, individually and on behalf of all persons similarly situated,** | **Civil Action No.:** _____ |
| **Plaintiffs,** | **Class & Collective Action** |
| **v.** | **Jury Trial Demanded** |
| **ROLLING GREEN LANDSCAPE AND DESIGN, INC. and DOMINIC J. VARALLO, JR.** | |
| **Defendant.** | |

# EXHIBIT C
## PLAINTIFF AYALA'S CHARGE OF DISCRIMINATION

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | ☐ FEPA ☐ EEOC | |

Pennsylvania Human Relations Commission                          and EEOC
_State or local Agency, if any_

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Hector Ayala Herrera | |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | DATE OF BIRTH |
| c/o Friends of Farmworkers, 699 Ranstead Street, #4   Philadelphia, PA 19106 | 6/24/1977 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME   Rolling Green Landscape and Design, Inc., a/k/a Rolling Green Landscaping | NUMBER OF EMPLOYEES, MEMBERS approximately 30 | TELEPHONE (Include Area Code) 215-794-1600 |
|---|---|---|
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |
| 3228 York Rd. A, 18925       Furlong, PA 18925 | | Bucks |
| NAME | | TELEPHONE NUMBER (Include Area Code) |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)) | DATE DISCRIMINATION TOOK PLACE |
|---|---|
| ☑ RACE   ☐ COLOR   ☑ SEX   ☐ RELIGION   ☑ NATIONAL ORIGIN ☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify) | EARLIEST 2013     LATEST March 2016 ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I am male, Latino, and of Mexican national origin. From mid to late 2013 through late March 2016, I was employed by Rolling Green Landscape and Design, Inc., also known as Rolling Green Landscaping. During that time, I was harassed on a daily basis by my boss on the basis of my sex, race, and national origin.

My boss, the owner of Rolling Green, Dominic Varallo (male, Caucasian) made sexual comments to me. He also made sexually explicit comments and gestures toward me and other male, Latino workers of Mexican and Guatemalan national origin. He frequently grabbed the private parts and buttocks of male Latino workers of Mexican and Guatemalan national origin. On more than one occasion, he grabbed my private parts and buttocks. Each time, I told him not to do it any more. On more than one occasion, Dominic painted the backsides of me and several male Latino workers of Mexican and Guatemalan national origin and told us, in words or substance, that he wanted to mark us so everyone would know that we belonged to him.

Dominic regularly referred to me and other male Latino workers of Mexican and Guatemalan national origin as "mis ninas," which means "my girls" in Spanish. Dominic singled out workers he believed were gay and called them "gay" or "maricones," a homophobic slur in Spanish. Dominic called me "gay" more than once. On several occasions, Dominic asked me why I liked women, and that I should be interested in men. He told me, in words or substance, that sex was better with men.

On several occasions, Dominic has pulled his pants down in front of me and other workers, revealing his buttocks. When other workers and I ask for our paychecks, many times Dominic responds by pulling his pants down, bending over, spreading his buttocks with his hands, and saying in words or substance, in Spanish, "you can find your check in here." I have seen Dominic wipe his buttocks with a paycheck, and then hand the check to the worker. Dominic often touches his crotch in front of workers, and says, in words or substance, "Do you want me?"

Dominic often uses racist and demeaning terms to refer to Latino workers of Mexican and Guatemalan national origin. He says "fucking Mexicans" to me and other workers. He also uses the following Spanish language slurs to refer to workers: "pinches illegales," "pinches Mexicanos," and "pinches Guatemaltecos."

I made several complaints to Dominic about the way he treated me and other workers. In response, Dominic said, in words or substance, "you are all my girls and I'll treat you how I want to treat you."

The incidents of harassment were degrading, offensive, and unwanted and created a hostile work environment for me and other workers.

Dominic also never paid me time and a half for overtime hours. Upon information and belief, he failed to appropriately pay all Latino workers of Mexican and Guatemalan national origin.

I believe that my employer discriminated against me and similarly situated workers because of my sex (male), race (Latino), and national origin (Mexican), in violation of Title VII of The Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| 12-6-2016 _(signature)_ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |
| Date          Charging Party (Signature) | |

EEOC FORM 5 (Rev. 07/99)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **HECTOR AYALA HERRERA and OVIDIO MENENDEZ PEREZ, individually and on behalf of all persons similarly situated,** : | **Civil Action No.:** _____ |
| **Plaintiffs,** : | **Class & Collective Action** |
| **v.** : | **Jury Trial Demanded** |
| **ROLLING GREEN LANDSCAPE AND DESIGN, INC. and DOMINIC J. VARALLO, JR.** : | |
| **Defendant.** : | |

## EXHIBIT D
## PLAINTIFF AYALA'S NOTICE OF RIGHT TO SUE

EEOC Form 161-B (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**NOTICE OF RIGHT TO SUE** *(ISSUED ON REQUEST)*

To:  **Hector Ayala Herrera**
**699 Ranstead Street, #4**
**Philadelphia, PA 19106**

From:  **Philadelphia District Office**
**801 Market Street**
**Suite 1300**
**Philadelphia, PA 19107**

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **530-2017-01076** | **Legal Unit,** **Legal Technician** | **(215) 440-2828** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐  More than 180 days have passed since the filing of this charge.

☒  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Spencer H. Lewis, Jr.,**
**District Director**

7/7/17

*(Date Mailed)*

cc:   **ROLLING GREEN LANDSCAPE AND DESIGN, INC.**

Liz Chacko, Esq. (for Charging Party)
Grace Deon, Esq. (for Respondent)